### Alder v. Yager.

(Decided May 25, 1926.)

### Appeal from Oldham Circuit Court.

1. Exchange of Property—Contract to Exchange Farm for Coal Mine, Induced by Misrepresentations, Held Properly Rescinded, Though Purchaser was Shown Part of Mine.—Contract to exchange plaintiff's farm for defendant's coal mine, induced by misrepresentations of defendant that mine was not a worked out mine, and

would average 30 inches thickness, held properly rescinded though plaintiff, knowing nothing of operation of mines, was personally shown parts of mine by defendant's employee.

2. Appeal and Error—Judgment of Chancellor, in Action Seeking Rescission and Specific Performance of Contract to Exchange Properties, will Not be Disturbed, Unless Mind is Not in Doubt as to Truth.—Where plaintiff sought rescission, and defendant specific performance, of contract to exchange farm for coal mine, judgment of chancellor on facts will not be disturbed, unless on whole case mind is not left in doubt as to truth.

J. BALLARD CLARK and H. H. OWENS for appellant.

EDWARDS, OGDEN & PEAK, ROBT. T. & W. J. CROWE and JULIAN T. YEAGER for appellee.

Opinion of the Court by Commissioner Hobson— Affirming.

J. W. Yager is a bank cashier living at Lagrange; he owned a farm near Lagrange in the spring of 1922 which he desired to sell. P. M. Alder owned a coal mine in Knox county at that time which he also desired to sell. He came to Lagrange and looked over Yager's farm; Yager then went to Knox county to look over the coal mine. After he had seen the coal mine, on April 11, 1922, a written contract was made between them by which Alder sold to Yager all the shares of stock of the Alder Steel Coal Company and a small boundary of land on which there was an oil well belonging to him. Yager by the contract agreed at once to convey with title of general warranty to Alder the farm near Lagrange, as soon as he could have it surveyed. Each party then took possession of the property bought. In June, 1922, Yager wrote Alder demanding a rescission of the contract and soon thereafter brought this suit for rescission on the ground of fraud. Alder filed answer denying the allegations of fraud and praying specific enforcement of the contract. Proof was taken and on final hearing the circuit court adjudged Yager the relief sought. Alder appeals.

Yager's testimony as to the representations made to him by Alder inducing him to make the contract is in these words:

"After looking over the property we went down to the house and discussed the mine and trade and Mr. Alder says, 'While I bought 100 acres of coal lands there will only be about 65 acres of workable

coal.' I said, 'Mr. Alder, you have been recommended to me pretty well and I can depend on what you tell me.' I says, 'How thick is this coal in the mine where you are operating?' He says, 'It will run from 30 to 36 or 38 inches and it ought to average 35 or 36.' I said, 'Mr. Alder, I don't know anything about a coal mine, tell me whether this is worked out coal mine where you are working.' He said, 'No, sir, in fact we have not got a great deal of coal out of it.' I says, 'Are you sure this mine will average 30 to 36 inches?' He said, 'Yes, sir.' I said, 'I would not want to buy coal in any mine that would not average 30 inches. While I don't know anything about a coal mine, I don't think it could be operated less than that.' He says, 'This will run over that.' I said, 'If it will run over that it looks like that is all that is necessary.' "

The record as a whole fully justified the chancellor in accepting as true this statement of what occurred between them. The facts as to the mine are that the main entry had been driven within a hundred or two feet of the property line and could not profitably be driven farther. The rooms on either side of the entry had been driven until the coal was only fourteen inches thick and could not profitably be operated farther. There was no coal in the mine that could be profitably operated except the pillars and stumps. The mine was not being operated at the time. The deed to this company covered about 100 acres, but whether there was any coal on the remainder of the survey could only be determined by making a new entry, and there was some evidence that unsuccessful attempts to find workable coal elsewhere had been made.

Alder insists that Yager made the trade with his eyes open after he examined the property. But the fact is that Yager went in the mine with one of Alder's former employes to guide him, each having on his hat a miner's lamp. This man showed Yager at two places in the mine the seam of coal where it was 36 inches thick, but he did not take Yager to the end of the entry or to the back of the rooms where the coal was only fourteen inches thick, and from this trip in the mine Yager did not learn the true facts. He learned these facts only after he took possession and undertook to operate the mine, when he soon found out that it was what is known as a worked out

mine. The farm which Alder got in the trade was worth about $12,000.00, and the mine was practically without value. The question presented is, shall the contract on these facts be enforced in a court of equity or set aside?

Alder insists that Yager cannot rely upon any misrepresentation of his after personally examining the mine. 26 C. J. 1162; Osborn v. Harvard, 195 Ky. 533; Skaggs v. Rader, 203 Ky. 741. But these authorities only apply where the party to whom the false representations were made does not rely on such statements, but on the result of his independent inquiries and his own judgment. That is not this case; Yager was not a coal miner. Alder knew that he knew nothing about coal mines. The examination that he made of the coal mine was only of such parts as the man took him to, and clearly it was not Yager's purpose or intent to buy a worked out mine. The case falls within this well settled rule of equity:

"Again, in the case of contracts which ought not in conscience to bind one of the parties, as where he has acted under a mistake, or has been imposed upon by the other party, or the like, a court of equity may interpose and afford relief, which a court of common law cannot, by setting aside the contract; and having thus obtained jurisdiction of the principal question, that court will proceed to make such other decree as the justice and equity of the case may require." 10 R. C. L., p. 352, section 101.

Alder lived at the mine. He knew its capacity and knew that it had been worked out. He did not let Yager know these facts, and on the contrary his representations to Yager, even as admitted by him, would mislead Yager as to the true condition of things. Under such circumstances the circuit court properly refused to enforce the contract and properly adjudged its rescission. The rule is well settled that the chancellor will not rescind an executed contract unless the evidence is clear and convincing. Ky., &c., Power Co. v. Leslie, 208 Ky. 246. But this is not an executed contract. Yager seeks a rescission and Alder seeks a specific performance. In such a case judgment will be given as equity demands, and the judgment of the chancellor on the facts will not be disturbed unless on the whole case the mind is not left in doubt as to the truth. McAllister v. Vaughn, 210 Ky. 666.

Judgment affirmed.